IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAWN RAUBE,                            )
                                       )
              Plaintiff,               )
                                       )    Case No. 06 C 2768
     v.                                )
                                       )
AMERICAN AIRLINES, INC.,               )
a corporation,                         )
              Defendant.               )

### MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Dawn Raube brings this diversity action against Defendant American Airlines, seeking recovery in tort for injuries sustained while walking on a jet bridge owned by Defendant. (*See* R. 1-1, Complaint, at pages 6-8.) Before the Court is Defendant's Motion for Summary Judgment. (R. 28-1.) For the reasons below, the Court grants Defendant's Motion.

### BACKGROUND

**I.    Local Rule 56.1**

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement

proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005).

The Seventh Circuit has "repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005) (collecting cases; internal quotation marks and citations omitted). If a party fails to comply with Local Rule 56.1, the Court disregards putative "facts" proffered by that party. *Id.* at 810 (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995)); *accord*, *e.g.*, *Cichon*, 401 F.3d at 809-10; *see also Roger Whitmore's Auto. Serv., Inc. v. Lake County*, 424 F.3d 659, 664 n.2 (7th Cir. 2005) ("It is not the duty of the district court to scour the record in search of material factual disputes . . . .") (collecting cases). In addition, the Court deems all well-supported material facts set forth in the movant's statement to be admitted unless controverted in the non-movant's statement by specific references. *See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (Castillo, J.) ("[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial."); *accord*, *e.g.*, L. R. 56.1(b)(3); *Cichon*, 401 F.3d at 808 ("Our review of Cichon's response establishes that a great many of Cichon's written attempts in opposition to Exelon's statement of material facts amount to nothing more than conclusory statements, unaccompanied by required record citations . . . constituting a violation of Local Rule 56.1."); *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1004, 1108 (7th Cir. 2004).

Plaintiff has fallen short of her Local Rule 56.1 obligations. In response to Defendant's Motion, Plaintiff has filed only a three-page document titled "Opposition to Defendant's Motion

2

for Summary Judgment" (hereinafter "Opposition"). (R. 37-1.) Plaintiff's single filing contravenes Local Rule 56.1(b), which requires a party opposing summary judgment to file multiple documents with the Court, including "a supporting memorandum of law" as well as "a concise response to the movant's statement [of material facts]." *See* L.R. 56.1(b)(2)-(3). It is unclear whether Plaintiff's Opposition is meant to be a legal memorandum, a response to Defendant's statement of uncontested facts, or a combination of the two.[1] The Opposition discusses, in a general manner, some of Defendant's factual claims, but it does not refer to specific paragraphs from Defendant's Statement, nor does it cite any evidentiary material. (*See* R. 37-1, at ¶¶ 3-7.) Rather, the Opposition contains only vague descriptions of a few potential factual issues and then states in a conclusory manner that each is a "genuine issue of material fact." (*Id.*) As such, Plaintiff's Opposition fails to satisfy Local Rule 56.1. *See* L.R. 56.1(b)(3)(B) (the nonmovant's response must contain "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record and other supporting materials relied upon"); *accord*, *e.g.*, *Malec*, 191 F.R.D. at 584 ("[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial."). Accordingly, the Court deems the facts proffered in Defendant's Statement to be admitted. *See*, *e.g.*, *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) ("The district court was entitled to take these facts as uncontested, as the local rule provides."); *Ammons*, 368 F.3d at 817 ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.")

---

[1] Plaintiff's Opposition cites cases from Illinois state courts regarding Illinois's summary judgment standard — cases that are irrelevant here. *See, e.g., Maroules v. Jumbo, Inc.,* 452 F.3d 639, 645-46 (7th Cir. 2006).

(quoting *Bordelon*, 233 F.3d at 527); *Midwest Imports*, 71 F.3d at 1316 ("[I]t is a reasonable judgment on the part of the district court that strict, consistent, 'bright-line' enforcement is essential to obtaining compliance with the rule and to ensuring that long-run aggregate benefits in efficiency inure to district courts.").

## II.     Undisputed Facts

As discussed above, the facts contained in Defendant's Statement are deemed to be admitted by Plaintiff. Moreover, because Plaintiff has failed to comply with the rules, the Court will not root through the record to make his case for him. *See Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1001 (7th Cir. 2004). The Court does, however, resolves any genuine factual ambiguities in Plaintiff's favor. *See Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

In May of 2004, Plaintiff was a passenger on an American Airlines flight from Miami to Chicago. (R. 32-1, at ¶ 1.) After the aircraft landed safely in Chicago, Plaintiff deplaned and stepped onto a jet bridge, which was owned and maintained by Defendant. (*Id.*, at ¶¶ 2, 18-19.) A jet bridge is an enclosed structure that connects the aircraft to the terminal building (*Id.*, at ¶ 24), and is designed to protect airline passengers from the weather while they board and deplane. (R. 33-1, Ex. B, at 23:23-24:5.) Several warning signs posted on the jet bridge displayed the words "Caution, uneven surfaces" and displayed a picture of a person tripping. (R. 32-1, at ¶¶ 29-31.) The jet bridge is used roughly 16 times per day by a total of approximately 3,200 passengers. (*Id.*, at ¶¶ 35, 37.)

The jet bridge was congested with other passengers at the time Plaintiff walked onto it. (*Id.*, at ¶ 4.) Plaintiff was being "rushed" by the other passengers, so she and a co-worker moved

4

to the right side of the jet bridge to allow other passengers to walk around them. (*Id.*, at ¶ 6.) As Plaintiff moved to the right side of the jet bridge, she was "nudged a bit" by another passenger. (*Id.*, at ¶¶ 12-13.) As a result of this nudge, Plaintiff tripped, fell, and twisted her ankle. (*Id.,* at ¶¶ 10, 12-13.) Plaintiff has admitted that the cause of her fall was the "nudge" she received from the other passenger. (*Id.*, at ¶¶ 12-13.) Plaintiff never noticed anything about the condition of the jet bridge that she thought was dangerous or defective. (*Id.*, at ¶ 9.)

Plaintiff filed a lawsuit against American Airlines in Illinois state court on April 26, 2006, seeking damages for injuries related to her fall. (R. 1-1.) The case was removed to federal court by Defendant on May 17, 2006, and slated on Judge Filip's docket. (*See id.,* at pages 1-3.) The case was then transferred to this Court on March 6, 2008. (R. 42-1.)

## LEGAL STANDARDS

**I. Summary Judgment Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

5

S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

## II.     Choice of Law

Because this is a diversity case, the Court must apply state substantive law. *See, e.g., Maroules,* 452 F.3d at 645-46. In determining which state's substantive law applies in a diversity action, a federal court must apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Thus, Illinois choice-of-law rules determine the applicable substantive law for this case. In an Illinois tort action, "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (1996) (citation omitted). Because the injury in this case occurred in Illinois, the substantive law of Illinois controls.

## III.     Negligence

Plaintiff is relying upon a theory of negligence to support her claims. Specifically, Plaintiff alleges that Defendant breached its duty of care by failing to ensure that the jet bridge was safe for passengers alighting from Defendant's aircraft. (R. 1-1, at ¶ 7.) In Illinois, "[t]o sustain a cause of action for negligence, a plaintiff must establish the existence of a duty owed by defendant to plaintiff, a breach of that duty, and an injury to plaintiff proximately caused by

6

the breach." *Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1178 (2000); *see also Iseberg v. Gross*, 879 N.E.2d 278, 284 (2007); *Gaines v. Chicago Transit Authority*, 804 N.E.2d 653, 656 (Ill. App. Ct. 2004). Defendant argues that Plaintiff has not proffered any evidence supporting the essential elements of a negligence claim.

## ANALYSIS

**I.     Duty of Care**

**A.     Common Carrier - Passenger Doctrine**

Defendant argues that it owed only a duty of "reasonable care" with respect to the jet bridge, and not the higher duty of care usually imposed upon common carriers. (R. 40-1, at pages 5-6.) Under Illinois law, a common carrier for hire owes more than a duty of "reasonable care" to its passengers; it must exercise "the highest degree of care consistent with the practical operation of its vehicles." *Gaines*, 804 N.E.2d at 656 (citing *Morris v. Chicago Transit Authority*, 328 N.E.2d 208, 209-10 (Ill. App. Ct. 1975)); *see also Aliotta v. Amtrak*, 315 F.3d 756, 765 (7th Cir. 2003). Once a passenger has safely alighted from the carrier, however, the defendant owes only a duty of ordinary care. *Sims v. Chicago Transit Authority*, 4 Ill. 2d 60, 64 (1954).

As a threshold question, the Court must determine whether Plaintiff was still a "passenger" at the time she was injured in the jet bridge. *Iseberg*, 879 N.E.2d at 284 ("Whether a duty is owed is a question of law for the court to decide."). The Illinois Supreme Court has stated that a carrier owes the highest degree of care to a person "who is in the act of boarding, is upon, or is in the act of alighting from, the carrier's vehicle." *Katamay v. Chicago Transit Authority*, 53 Ill. 2d 27, 29 (1972). In *Katamay*, the court further explained that "[t]he relation of

carrier and passenger does not terminate until the passenger has alighted from the train and left the place where passengers are discharged, and the duty of the carrier to its passenger continues, until the passenger has had a reasonable time in which to leave the ... alighting place." *Katamay*, 289 N.E.2d at 625 (internal quotations and citation omitted); *Fillpot v. Midway Airlines*, 633 N.E.2d 237, 241 (Ill. App. Ct. 1994). Similar to the situation in *Katamay*, Plaintiff was "in the act of [de]boarding" the carrier at the time of the alleged injury. *Katamay*, 289 N.E.2d at 625. Moreover, Plaintiff had no choice but to exit the airplane in the manner prescribed by Defendant. *See Fillpot*, 633 N.E.2d at 241. Accordingly, at the time Plaintiff was injured, Defendant owed her the higher standard of care attendant a carrier - passenger relationship.

Defendant cites *Sheffer v. Springfield Airport Authority*, 632 N.E.2d 1069 (Ill. App. Ct. 1994) for the proposition that Plaintiff was no longer a passenger when she stepped onto the jet bridge. (R. 40-1, at 5.) Defendant's argument is misplaced. In *Sheffer*, the plaintiff sued an airline company for injuries she sustained when she slipped and fell on a patch of ice on an airport tarmac after she had exited an airplane. *Sheffer*, 632 N.E.2d at 1070. The court held the defendant owed a common carrier's duty of highest care toward its passengers on the tarmac, and was "bound to furnish the passenger an opportunity to safely alight from the conveyance and reach a place of safety." *Id.* at 1071-72. This higher duty, however, was supplanted by the "natural accumulations rule," which states that a common carrier has no duty to clean up natural accumulations of snow, ice, and water. *Id.* Properly read, *Sheffer* undercuts rather than supports Defendant's argument that the common carrier rule does not apply to individuals exiting an airplane because the court made clear that had the natural accumulations rule not been triggered, the defendant would have been subject to an elevated standard of care. *See id.* at 1071-72; *see*

*also Fillpot*, 633 N.E.2d at 242-43.

Defendant also cites *Neering v. Illinois C. R.R. Co.*, 50 N.E.2d 497, 501 ( 1943) for the proposition that "[Defendant's] heightened duty as a common carrier does not extend to appurtenances such as the jet bridge...." (R. 30-1, at page 5, n.2.) *Neering* does not stand for such a broad proposition. Rather, that case held that a common carrier – a train operator – did not owe a heightened duty to a passenger waiting for the train in the station. Unlike the facts in this case, the plaintiff in *Neering* was not boarding or exiting from a carrier at the time she was injured; she was merely waiting for the train to arrive. *Id.* at 370; *see also Davis v. South S. E. R. Co.*, 127 N.E. 66, 68 (1920).

### B. Duty Owed to Defendant

As a common carrier, Defendant owed Plaintiff "a duty to exercise the highest degree of care." *Katamay*, 289 N.E.2d at 625; *Manus v. Trans States Airlines, Inc.*, 835 N.E.2d 70, 73 (Ill. App. Ct. 2005). "As a result of the unique control it possesses over the safety of its passengers, a common carrier owes its passengers the highest degree of care consistent with the mode of conveyance adopted and the practical operation of its business." *De Bello v. Checker Taxi Co.*, 290 N.E.2d 367, 370 (1972); *Manus*, 835 N.E.2d at 73. Despite this heightened duty, a carrier is not an "absolute insurer of the safety of its passengers." *Gaines*, 804 N.E.2d at 656 (citing *Morris v. Chicago Transit Authority*, 328 N.E.2d 208, 209-10 (Ill. App. Ct. 1975)). Thus, "[a]n injury is not actionable if it was not foreseen, or could not have been foreseen or reasonably anticipated." *Kerby v. Chicago Motor Coach Co.*, 171 N.E.2d 412, 415 (Ill. App. Ct. 1960); *see also Jordan v. Nat'l Steel Corp.,* 183 Ill. 2d 448, 457 (1998) ("[P]laintiff was required to prove that defendants knew or should have known that the handrail posed an unreasonable risk of

harm.").

## II. Breach of Duty

Although Defendant is held to the highest standard of care, Plaintiff has offered no evidence that Defendant breached its duty. While Plaintiff alleges in her Complaint and otherwise suggests several acts which could be construed as a breach of duty, she offers no evidence to support these vague innuendos. Plaintiff, for example, offers no evidence in support of her conclusory arguments that she was "blocked by Defendant's personnel and equipment," or that the jet bridge conditions "restricted safe passenger movement" (R. 37-1, at ¶ 5), and the Court therefore disregards these putative facts. *See Cichon*, 401 F.3d at 809. Moreover, while Defendant admits that a "dip or gutter" existed in the jet bridge near where Plaintiff fell, Plaintiff has admitted that she "never noticed anything about the condition of the jet bridge that she thought was dangerous or defective." (R. 32-1, at ¶ 9.) In addition, Plaintiff concedes that Defendant displayed signs warning passengers of the uneven surface. (*Id.*, at ¶¶ 29, 31.) Plaintiff further admits that she fell only when nudged by another passenger, and she puts forth no evidence that she fell as a result of the dip or gutter. (*Id.*, at ¶¶ 12-13.) As such, Plaintiff has failed to raise a material factual issue as to whether the jet bridge was dangerous or defective.

Plaintiff has also failed to show that Defendant had notice of any unsafe condition. Plaintiff admits that, at the time of Plaintiff's accident, no other passenger had trouble walking on the jet bridge. (*Id.*, at ¶ 14.) Moreover, Plaintiff does not dispute that Defendant was unaware of any complaints regarding passengers who slipped or fell on the jet bridge. (*Id.*, at ¶ 23.) Thus, Plaintiff has failed to raise a material factual issue as to whether Defendant was on notice of any unreasonable risk or harm.

Because Plaintiff has failed to offer any evidence indicating that Defendant breached its (heightened) duty of care in operating the jet bridge, summary judgment is proper. *See Schrott*, 403 F.3d at 944 ("By conceding that this essential element of her case could not be proven, Schrott left the court with no option but to grant the defendants' summary judgment motion."); *see also Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[W]e have consistently held that summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotations and citations omitted).

### III. Proximate Causation

Likewise, Plaintiff has offered no evidence that Defendant caused her injuries. A common carrier is "liable to its passenger only for injuries that are caused by its negligence; it is not liable for injuries that result from a cause beyond its control." *Gaines*, 804 N.E.2d at 656 (citing *Nilsson v. Checker Taxi Co.*, 281 N.E.2d 721, 723 (Ill. App. Ct. 1972)); *see also Smith v. Chicago Limousine Service, Inc.*, 441 N.E.2d 81, 84 (Ill. App. Ct. 1982) (a common carrier "is not responsible for personal injuries sustained by [a passenger] in the absence of some unjustifiable act of commission or omission") (citations omitted). In other words, "the mere fact that there is an accident which injures a passenger does not warrant a presumption that the carrier was negligent." *Gaines*, 804 N.E.2d at 656 (citing *Nilsson*, 281 N.E.2d at 723).

Here, Plaintiff has admitted that another passenger was the cause of her accident. (R. 32-1, at ¶¶ 12-13.) In Illinois, "a common carrier is not liable for the actions of a third party unless "the common carrier had sufficient indications of danger to its passengers to necessitate protective measures for their safety." *Anderson v. Yellow Cab Co.*, 329 N.E.2d 278, 280 (Ill.

App. Ct. 1975); *see also Gaines*, 804 N.E.2d at 656 (defendant not liable for the actions of its passenger); *Morris*, 328 N.E.2d at 209 (because plaintiff offered no evidence that defendant had knowledge of the dangerous actions of third parties, defendant not liable for the third parties' actions). The undisputed fact that another passenger caused Plaintiff's injury coupled with Plaintiff's failure to put forth any evidence of Defendant's negligence dooms Plaintiff's claim. *See Gaines*, 804 N.E.2d at 656.

Given the lack of evidence supporting the proximate causation element of Plaintiff's negligence claim, Plaintiff has failed to raise an issue of material fact and therefore Defendant is entitled to summary judgment. *See Schrott*, 403 F.3d at 944; *Myers*, 486 F.3d at 1022.

## CONCLUSION

For the reasons set forth above, the Court grants Defendant's Motion for Summary Judgment and dismisses Plaintiff's claims against Defendant.

**Dated:** March 13, 2008

**ENTERED**

*[signature]*

**AMY J. ST. EVE**
**United States District Court Judge**